**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

UNITED STATES OF AMERICA

v.                                                      Case No.  1:19-cr-10117-IT

MARJORIE KLAPPER

---

### DEFENDANT MARJORIE KLAPPER'S RESPONSE TO THE GOVERNMENT'S MEMORANDUM REGARDING THE METHODOLOGY FOR CALCULATING GAIN OR LOSS UNDER THE SENTENCING GUIDELINES

Defendant Marjorie Klapper ("Mrs. Klapper") respectfully responds to the *Government's Memorandum Regarding the Methodology for Calculating Gain or Loss under the Sentencing Guidelines* (Document No. 420) (herein, "Loss Memorandum"). While Mrs. Klapper has stipulated that "…the *loss* or gain amount is more than $6,500 but not more than $15,000," Plea Agreement at 2 (Document No. 320) (emphasis added), for the reasons below she disagrees that the additional amounts set forth in the Government's Loss Memorandum are in any way attributable to her as loss or may otherwise be utilized to enhance her sentence.

In sum, the Government has waived its right to assert such additional losses at this late date for failing to abide by this Court's Amended Procedural Order.  *See* Document No. 400. Alternatively, the losses alleged are either non-existent or speculative—at best—and in no way constitute "pecuniary harm."  Finally, the losses alleged are outside the scope of Mrs. Klapper's jointly undertaken criminal activity, and therefore, do not constitute relevant conduct under the Sentencing Guidelines.  Therefore, this Court should disregard for all purposes—including

whether to depart or vary from the Sentencing Guidelines—the Government's byzantine arguments in support of outlandish losses it failed to timely disclose to Mrs. Klapper.[1]

## I.   THE GOVERNMENT HAS WAIVED THE RIGHT TO INTRODUCE SUCH EVIDENCE AT THIS LATE DATE UNDER THE COURT'S AMENDED PROCEDURAL ORDER

Per Paragraph 2 of this Court's Amended Procedural Order of May 24, 2019 (Document No. 400 at 1), the Government was required to serve on defense counsel "*a copy of everything provided to the Probation Office*" "[n]ot later than seven days after the plea."  Mrs. Klapper pleaded guilty on May 24, 2019.  *Id.* (Emphasis added). Thus, the Government had until June 1, 2019 to provide defense counsel with "a copy of everything provided to the Probation Office." The Government never disclosed any documents supporting the allegations of additional loss set forth in its Loss Memorandum.

Per Paragraph 3 of this Court's Amended Procedural Order (Document No. 400 at 2), also "[n]ot later than seven days after the plea or verdict the attorney for the government shall provide to the United States Probation Office a written statement setting forth the names of the victims, their contact information/addresses, *and the amount of loss sustained by each victim/restitution owed to each victim* pursuant to the Federal Rules of Criminal Procedure, Rule 32(c)(1)(B)." (Emphasis added).  While this disclosure appears to already have been made to the Probation Office, *see* Loss Memorandum at 1, n.1 (Document No. 420 at 2), the same was never provided to defense counsel as required by Paragraph 2.

---

[1] It is especially ironic that the Government engages in this tactic where it otherwise has objected to this Court privately consulting with its own probation officer because of "the exceptional public interest in *transparency* in the sentencing process." Letter from U.S. Attorney Andrew E. Lelling to Hon. Indira Talwani at 2 (Aug. 23 2019) (Document No. 411) (emphasis added).  This Court agreed: "the legal questions regarding the enhancement for gain/loss should be considered on the record, with *full transparency* and opportunity for argument."  Order at 2 (Document No. 412) (emphasis added).  Failing to timely disclose evidence in support of losses that purportedly extend into the millions of dollars is hardly consistent with the principle of "transparency in the sentencing process."

At no time has the Government sought leave of this Court to extend the disclosure deadline. *See* Amended Proc. Order at 4, ¶ 11 (Document No. 400) ("The schedule set forth in this Order may be modified by the Court for good cause shown."). Certainly, with regard to the victim loss statements, it is impossible for the Government to now establish good cause for failing to disclose the same to defense counsel where it already has provided such statements to the Probation Office.

For this Court to consider these arguments and materials now would extraordinarily and unfairly prejudice Mrs. Klapper especially given the nature and magnitude of the losses alleged.[2] Here, the Government is arguing that there are potentially tens of millions of dollars in losses. *See* Loss Memorandum at 6 (arguing an estimated salary loss to USC of up to $700,731 and to Georgetown of up to $90,413); *id.* at 10 (lost application revenue to USC of up to $540,000 per year, and to Georgetown of $170,000 per year); *id.* at 13 (loss revenue to ACT from 800,000 California state university applicants at $49.50 minimum per application, which totals $39,600,000 per year). These losses, such as they are, would exceed $100 million in just three years.

Mrs. Klapper's sentencing is scheduled to occur in just over one month. For her to now be required to investigate and potentially litigate the validity, let alone the relevance, of these claims is exceedingly unfair especially where the Government has never remotely intimated that it would be raising such claims and where the Government never disclosed the documents on which such claims are based.

The Government should have disclosed these additional losses and any supporting evidence no later than June 1, 2019, i.e., over three months ago. Accordingly, the Government

---

[2] It likewise is inappropriate and unfair for the Government to reference "the final and draft Presentence Investigation Reports ("PSRs") prepared to date" in its filing. Loss Memorandum at 2. As the Court is well-aware, PSRs are confidential documents that may not be disclosed to third-parties absent a showing of special need. *See United States v. Connolly (In re Boston Herald, Inc.)*, 321 F.3d 174, 188 (1st Cir. 2003). This is so "even in the face of a *Brady* request for information from another defendant's presentence report." *Id.* It thus is impossible for Mrs. Klapper to respond to the Government's assertions regarding said PSRs especially where she has yet to receive even a draft of her own PSR.

has waived any right to introduce such new evidence of these alleged losses at this late date. Accordingly, this Court should disregard the same for all purposes including departures and variances.

## II.   THE ALLEGED LOSSES ARE WHOLLY SPECULATIVE AND DO NOT CONSTITUTE PECUNIARY HARM

As argued in the next section, none of Mrs. Klapper's offense conduct even remotely involved either USC or Georgetown.  So, all the losses alleged by the Government with respect to those entities are irrelevant for purposes of Mrs. Klapper's sentencing.

That leaves the testing agencies.  However, and once again, while "[t]he agencies acknowledge these losses in individual victim impact statements they have submitted to the Court," Loss Memorandum at 12, the same have never been provided to defense counsel by the Government and should therefore be disregarded.

Notwithstanding the above, these alleged losses are wholly speculative, as even the Government concedes, and thus reliance on the same would violate Mrs. Klapper's due process right to be sentenced only on evidence that has "sufficient indicia of reliability to support its probable accuracy." USSG §6A1.3(a); *id.* comment. ("Unreliable allegations shall not be considered.") (Citation omitted); *Betterman v. Montana*, 136 S. Ct. 1609, 1617 (2016) ("After conviction . . . [a defendant] retains an interest in a sentencing proceeding that is fundamentally fair."); *United States v. Flete-Garcia*, 925 F.3d 17, 36 (1st Cir. 2019) ("The Due Process Clause protects a defendant by, inter alia, safeguarding against a sentence predicated on information that is false or materially incorrect.") (Citation and internal quotation marks omitted). As most relevant here, "a criminal defendant enjoys a due process right not to be sentenced on false information, and due process therefore requires that the defendant be given an adequate opportunity to refute

information relied on at sentencing." *United States v. Wilfred Am. Educ. Corp.*, 953 F.2d 717, 722 (1st Cir. 1992) (citation omitted).

While the Government claims that "in the weeks and months after the fraud was publicly disclosed, numerous universities announced they will no longer require applicants to submit standardized test scores as part of their applications, resulting in decreased revenue for the testing agencies," *id.*, it nonetheless concedes that "*it is difficult to attribute any one of these decisions directly to the fraud scheme.*" *Id.* at 13 (emphasis added). Loss, for purposes of the Guidelines, requires a showing of proximate cause. *See* USSG §2B1.1, comment. (n.3(A)(i)) ("'Actual loss' means the reasonably foreseeable pecuniary harm that *resulted from* the offense.") (Emphasis added); *id.* ("'Pecuniary harm' means harm that is monetary or that otherwise is readily measurable in money. Accordingly, pecuniary harm does not include emotional distress, harm to reputation, or other non-economic harm."); *United States v. Alphas*, 785 F.3d 775, 782 (1st Cir. 2015) ("The guidelines are designed to ensure that the sentence imposed on a defendant 'reflect[s] the nature and magnitude of the loss *caused* or intended by [her] crimes.' USSG§ 2B1.1, comment. (backg'd.).") (Emphasis added); *United States v. Curran*, 525 F.3d 74, 80-81 (1st Cir. 2008) (quoting Amendment 617 to USSG §2B1.1 and noting that loss requires both "factual causation" and "legal causation"); *United States v. Morehouse*, 345 F. Supp. 2d 3, 7 (D. Mass. 2004) (Woodcock, J.) (noting that with respect to loss "there is a causation requirement"). By its own concession that these losses can be attributed to the instant fraud scheme, and by its failure to timely provide any evidence in support, the Government makes this whole line of argument irrelevant.

Even more speculative—and outright gratuitous—is the Government's citation to *pending* California legislation for the proposition that the testing agencies stand to incur losses of tens of

millions of dollars. *See* Loss Memorandum at 13. As the Government readily notes, however, while the legislation passed the Assembly, it has yet to pass the Senate or otherwise be signed into law. *Id.* This Court should therefore decline the Government's invitation to engage in such wholesale speculation which plainly would violate Mrs. Klapper's fundamental due process right to be sentenced only on evidence that is both accurate and reliable.

## III.    ANY ALLEGED LOSS IS OUTSIDE THE SCOPE OF RELEVANT CONDUCT

Mrs. Klapper pleaded guilty to a single count of conspiracy to commit wire fraud and honest services mail fraud pursuant to 18 U.S.C. § 1349. (Document No. 320 at 1). Sentencing for conspiracies are circumscribed by the rules governing jointly undertaken criminal activity. "A 'jointly undertaken criminal activity' is a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others." USSG §1B1.3, comment. (n.3(A)). As the application note further explains:

> In the case of a jointly undertaken criminal activity, subsection (a)(1)(B) provides that a defendant is accountable for the conduct (acts and omissions) of others that was:
>
> (i)    within the **scope** of the jointly undertaken criminal activity;
>
> (ii)    in **furtherance** of that criminal activity; and
>
> (iii)    **reasonably foreseeable** in connection with that criminal activity.
>
> The conduct of others that meets all three criteria set forth in subdivisions (i) through (iii) (i.e., "within the scope," "in furtherance," and "reasonably foreseeable") is relevant conduct under this provision. However, when the conduct of others does not meet any one of the criteria set forth in subdivisions (i) through (iii), the conduct is not relevant conduct under this provision.
>
> *See* USSG §1B1.3, comment. (n.3(A)) (emphasis added).

In *United States v. Laboy*, 351 F.3d 578, 582-583 (1st Cir. 2003), the United States Court

of Appeals for the First Circuit has explained the following:

> This type of liability . . . has its limit: mere knowledge of another's activity
> is not enough to show liability under U.S.S.G. § 1B1.3. . . . ***The defendant is
> only responsible for foreseeable conduct within the scope of his own
> explicit or implicit agreement.*** *See, e.g., United States v. Carrozza*, 4 F.3d
> 70, 76 (1st Cir. 1993)("So as to keep the criminal responsibility within
> bounds, § 1B1.3 requires sentencing courts to ascertain on an individual
> basis the scope of the criminal activity that the particular defendant agreed
> jointly to undertake."); *United States v. Innamorati*, 996 F.2d 456, 488-89
> (1st Cir. 1993)("Each member of a drug conspiracy may be held
> accountable at sentencing for a different quantity of narcotics, depending
> on the circumstances of each defendant's involvement."). While a
> conspiracy charge may encompass all acts by co-conspirators in furtherance
> of the conspiracy, *see Pinkerton v. United States*, 328 U.S. 640, 647, 90 L.
> Ed. 1489, 66 S. Ct. 1180 (1946), "***relevant conduct*" *is limited to the
> foreseeable acts resulting from the defendant's particular agreement.
> Thus, the scope of relevant conduct is "not necessarily the same as the
> scope of the entire conspiracy."* U.S.S.G. § 1B1.3, cmt. (n.2).
> (emphasis added).

Nowhere in her Plea Agreement nor in the Statement of Facts—both of which were drafted

by the Government—is there even a hint of the losses the Government now alleges in its Loss

Memorandum were in any way encompassed within the scope of Mrs. Klapper's relevant conduct,

let alone that they were foreseeable, or were caused by her offense conduct.

At most, Mrs. Klapper may be held accountable for the losses incurred by ACT, Inc. for

the relevant portions of salaries and expenses it may have paid to Mark Riddell and Igor Dvorskiy

for respectively proctoring Mrs. Klapper's son's exam and correcting the same.  Indeed, the

Government argues for precisely this outcome when it states that "the College Board, Educational

Testing Service ('ETS') and the ACT, Inc. have suffered pecuniary harm from the lost wages they

paid to their corrupt proctors."  *See* Loss Memorandum at 11.[3]

---

[3]To be sure, the Government also contends that the same entities also incurred as loss "the cost of their internal
investigations, the cost of strengthening their security practices in direct response to the defendants' conduct, the lost
revenue resulting from a decline in the number of students taking those exams, and the decline in the value of their

As noted above, Mrs. Klapper has stipulated that there were associated losses of at least $6,500, but no greater than $15,000.   None of the facts Mrs. Klapper otherwise has admitted, nor any evidence the Government has provided to date or argued in its Loss Memorandum, can even remotely establish the required causal nexus between Mrs. Klapper's relevant conduct and any of the alleged additional losses.

Thus, the Government is incorrect that Mrs. Klapper "stipulated that, pursuant to Section 2B1.1(b) of the Sentencing Guidelines, [her] offense levels should be enhanced *based on the amount of money [she] paid* to facilitate the fraud scheme."   Loss Memorandum at 1 (emphasis added).   Mrs. Klapper did no such thing and neither the Plea Agreement nor the Statement of Facts contain such language.   Rather, Mrs. Klapper stipulated only that "the *loss* or gain amount is more than $6,500 but not more than $15,000."   Plea Agreement at 2 (Document No. 320) (emphasis added).   As even the Government recognizes, Loss Memorandum at 2, this Court may not resort to gain unless there is a loss and the same cannot be reasonably determined.[4]  *See* USSG §2B1.1, comment. (n.3(B)).

Again, and to be clear, Mrs. Klapper asserts there is a loss and it can reasonably be determined, to wit, the losses associated with the proctoring and correcting of Mrs. Klapper's son's ACT exam, which are at least $6,500 and in no event greater than $15,000.   Whatever amounts she may have paid therefore are irrelevant for Guidelines application purposes.

---

intellectual property."  Loss Memorandum at 1.  Of course, none of these costs constitute loss for Guidelines purposes. *See* USSG §2B1.1, comment. (n.3(D)(i), (ii)) (excluding from loss "[i]nterest of any kind, finance charges, late fees, penalties, amounts based on an agreed-upon return or rate of return, or other similar costs;" "[c]osts to the government of, and costs incurred by victims primarily to aid the government in, the prosecution and criminal investigation of an offense.").

[4] The Government misstates the rule for gain when it writes that "the Guidelines instruct that where a *precise* loss amount cannot be 'reasonably determined,' the Court should substitute the gain from the offense." Loss Memorandum at 2 (emphasis added).  The Guidelines do not require *precision* with respect to loss; only a "reasonable estimate" is required. *See* USSG §2B1.1, comment. (n.3(C)) ("The court need only make a reasonable estimate of the loss.").

## IV.    THE GOVERNMENT IS FRUSTRATED BECAUSE THE PROBATION DEPARTMENT DOES NOT AGREE WITH ITS THEORY OF LOSS

The Government disagrees with the Probation Office's position that it has failed to establish that Mrs. Klapper's conduct caused pecuniary harm.  Probation's assessment of Mrs. Klapper's offending conduct happens to be more favorable for the defense, which apparently frustrates the Government.  If there was no pecuniary harm, then this Court may not use the amounts Mrs. Klapper paid as an alternative measure of harm.  Rather than try to establish pecuniary harm that is reasonably and fairly consistent with the Plea Agreement and Statement of Facts, the Government embarks on a gratuitous and tortured path in an attempt to persuade this Court to commit plain error.  In essence, the Government argues there was—and will be—tens of millions of dollars in pecuniary harm; however, since the amount cannot reasonably be determined, the Government is urging the Court to utilize the $15,000 Mrs. Klapper paid hoping it will buttress its sentencing presentation.  The Government makes no effort to identify what portion of such purported enormous loss is related to Mrs. Klapper's conduct.  Rather, the Government is now trying to throw any conceivable loss theory against the wall with the hope something will stick— even over three (3) months from when it was obligated to produce such information under the Amended Procedural Order.

If all the Government needs to prove is a modest amount of actual pecuniary harm, then it is perplexing as to why it is asserting such enormous amounts of loss under a very convoluted Guidelines application theory.  Frustrated with the Probation Department's position on sentencing, it appears the Government is trying to spark public outrage to place pressure on the Court to impose an upward departure or variance at sentencing with its late disclosure of loss theories.  This should trouble the Court immensely—especially in light of the Government's recent protestations about

transparency in its letter of August 23, 2019 objecting to a private sentencing recommendation from Probation.  *See* Document No. 411.

Pursuant to her plea agreement, Mrs. Klapper has stipulated there was a loss of at least $6,500 but not more than $15,000 attributed to her conduct, which is payments ultimately received by the employee(s) of ACT, Inc.  Said amount is a reasonable estimate because it is related to the offense with which Mrs. Klapper was charged and to which she has pled guilty.

<u>CONCLUSION</u>

For the reasons set forth above, Mrs. Klapper respectfully requests that this Honorable Court order that the Government waived its right to allege additional losses asserted in its September 5, 2019 memorandum, and therefore, that said argument be disregarded for all purposes in the above-captioned action.  Mrs. Klapper respectfully reserves her right to further brief this Court on matters pertinent to her sentencing in accordance with this Court's Amended Scheduling Order.

Respectfully submitted,

**DEFENDANT MARJORIE KLAPPER**

By her attorneys,

Dated:  September 8, 2019

 */s/ Daniel K. Gelb*
Daniel K. Gelb, Esquire
BBO# 659703
**GELB & GELB LLP**
900 Cummings Center, Suite 207-V
Beverly, Massachusetts 01915
Telephone (617) 345-0010
Fax (617) 345-0009
*dgelb@gelbgelb.com*

Appearing *pro hac vice*

Jonathan D. McDougall, Esquire
**THE LAW OFFICE OF**
**JONATHAN D. MCDOUGALL**
1640 Laurel Street
San Carlos, CA 94070
Telephone (650) 594-4200
Fax (650) 594-4205
*jmcdougall.law@gmail.com*

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on September 8, 2019 this document was electronically filed with the Clerk of Court for the United States District Court for the District of Massachusetts using the CM/ECF system, which will send a notice of electronic filing (NEF) to all registered participants in the above-captioned action.

/s/ *Daniel K. Gelb*
Daniel K. Gelb, Esquire