UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.       )<br>)<br>(8) MARJORIE KLAPPER,    )<br>)<br>Defendant    )<br>) | Criminal No.: 19-10117-IT-8 |

## GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

The government respectfully submits this supplemental memorandum in connection with the sentencing of defendant Marjorie Klapper.

Klapper is a successful entrepreneur who agreed to pay $15,000 to have a corrupt proctor correct her younger son's ACT exam and thereby artificially inflate his score.

Klapper also engaged in other forms of fraud. Alone among the defendants in this Information, Klapper also agreed with co-conspirator William "Rick" Singer to falsify her son's college applications by claiming that he was African-American and of Hispanic/Latino origin, and that neither she nor her husband had attended college. And even before engaging in the exam cheating scheme, Klapper worked with Singer to fabricate an explanation for her older son's high SAT score after the Educational Testing Service ("ETS") accused him of cheating on the exam (which he took without Singer's help).

For her actions, Klapper should be sentenced to 4 months of incarceration, followed by 12 months of supervised release, and a $20,000 fine.

I. **Klapper Engaged in Multiple Forms of Fraud**

Klapper engaged in multiple forms of fraud over the course of three years.

By 2014, Klapper had hired Singer to prepare her older son for his standardized college admission tests. *See* Ex. A (November 20, 2014 e-mail chain).[1] In March 2015, Klapper's older son received an SAT score of 2140 out of a possible 2400, placing him in the 93rd percentile. *See* Ex. B (April 2, 2015 e-mail chain). Although that test did not involve a corrupt proctor, ETS, which administers the SAT exam, suggested that Klapper's son had cheated on the test by copying the answers of a student seated nearby, noting "an extremely unusual" discrepancy between Klapper's older son's PSAT score and his SAT score and "substantial agreement" between his answers and those of the other student. *See* Ex. C (May 6, 2015 e-mail and attachment). ETS threatened to cancel the score.

Klapper expressed concerns that her son would not do well if re-tested. *See* Ex. D (May 7, 2015 e-mail). She agreed with Singer to submit a fake invoice to ETS to explain her son's performance by falsely claiming he had had more than 170 hours of private tutoring in preparation for the test. *See, e.g.*, Ex. E (May 13, 2015 e-mail and attached invoice); Ex. F (June 16, 2015 e-mail chain). Unpersuaded by the fraudulent submission, ETS canceled the score. *See* Ex. G (May 20, 2015 letter).

Two years later, Klapper learned that the daughter of co-conspirator Peter Jan Sartorio was taking the SAT at Singer's West Hollywood Test Center and asked Singer if her younger son could also take his test there, even though the Klappers lived in Menlo Park, hundreds of miles away. Klapper said: "I heard [Sartorio's daughter] is taking [the SAT] in LA. Can [my younger son] do

---

[1] All exhibits are being submitted to the Court under seal, together with a motion to seal, pursuant to the protective order entered by Magistrate Judge Kelley in related cases. *See, e.g.*, 19-CR-10081-IT Dkt. 165.

that?" Ex. H (March 1, 2017 e-mail chain). Singer responded that "there [is] a financial consideration to take it there," to which Klapper replied, "Quanto ☺" – that is, "how much?" *Id*.

Over the next several months, Klapper took steps to enable the cheating scheme. In April 2017, she called ETS to inquire about transferring her son's SAT exam from his high school to an "alternate location." *See* Ex. I at 7-8 (April 21, 2017 call transcript, in which Klapper told an ETS representative "that is a key thing to have [the exam] in an alternate setting," and asked "the besides taking [the exam] at his school. . . . just in case we can't coordinate it exactly with the school are there alternate places as well? Is there a way to word [the request] if we need an alternate location?"). Although ETS denied Klapper's application for 100 percent extended time on the SAT exam, she was able to obtain extended time from the ACT, allowing Klapper's son to take that test at the West Hollywood Test Center. *See* Ex. J (June 10, 2017 e-mail chain, in which Klapper asked Singer "Do these accommodations mean alternate location?," and Singer confirmed, "As long as you have ACT with 100 percent time we can take the test at an alternative site."). In September 2017, Klapper sent Singer the documentation needed to transfer her son's ACT exam to Singer's corrupt facility in Los Angeles. *See* Ex. K (September 14, 2017 e-mail chain).

Klapper's son took the ACT at the West Hollywood Test Center on October 28, 2017. After he completed the exam, co-conspirator Mark Riddell corrected his answers, achieving a score of 30 out of a possible 36, in the 94th percentile. *See* Ex. L (ACT Score Report). Klapper paid for the scheme by making a purported contribution of $15,000 to Singer's Key Worldwide Foundation ("KWF") in November 2017. Singer, in turn, paid Riddell and Igor Dvorskiy, the

corrupt test center administrator. Klapper's son used the fraudulent ACT score to apply to universities in Arizona, California, Colorado and elsewhere.

In October 2018, Singer – acting at the direction of law enforcement agents – told Klapper that the Internal Revenue Service ("IRS") was auditing KWF. During the call, which was consensually recorded, Klapper agreed to lie to the IRS if asked about her payment to KWF, telling Singer: "Okay. So, if somebody calls and said, 'Why did you write this check?' . . . I'm gonna say, 'I wrote it to support the foundation, which serves underprivileged kids.'" Ex. M at 1-4 (October 24, 2018 call transcript).

Thereafter, Klapper reaffirmed with Singer a plan they had first discussed before Singer began cooperating with law enforcement: to misrepresent her son on his applications as African American and of Hispanic/Latino origin, in an apparent attempt to further improve his odds of admission by claiming minority status. *See, e.g.*, Ex. N (November 26, 2018 e-mail and attached college application). Klapper also agreed to falsely represent the highest education level she and her husband had achieved as "high school" – even though both graduated from college – hesitating only because she wondered whether her son's odds of admission to a school her husband attended would be even better as a legacy applicant. *See* Ex. O at 12-13 (December 2, 2018 meeting transcript).

## II. Klapper's Criminal Conduct Requires a Meaningful Term of Incarceration

Klapper's successive and varied frauds warrant a meaningful sentence of incarceration. She started by misleading ETS when her older son was accused of cheating on the SAT exam. She continued by engaging Singer to cheat on her younger son's ACT exam. And she went further by agreeing to misrepresent her son's race and ethnicity, and to falsely portray him as the child of parents who had not attended college.

This last choice in particular – to lie about her son's race, ethnicity, and background – distinguishes Klapper from her co-defendants in this Information. She purposefully sought to portray her son as a minority, and the child of parents who did not attend college, despite the fact that he was neither, because she thought that lie would further bolster his college prospects. She thereby increased the likelihood that her fraud would come at the expense of an actual minority candidate, or an applicant who was actually the first in his or her family to attend college.

Nor did Klapper ever have second thoughts as she repeatedly engaged in fraud. She knew what she was doing was wrong, but hesitated only once – and that was to make sure that lying about her husband's education level would give her son a better shot than applying as a legacy.

She did whatever was necessary to further the cheating scheme. She reached out to Singer about the scheme, proactively contacted testing agencies to find out how to move her son's exam to an "alternative location," and then exploited the testing accommodations process to facilitate the fraud, rather than to address her son's legitimate need for extra time on the exam. After receiving the accommodation, she forwarded the paperwork to Singer to enable him to move the exam to his corrupt facility. And once the fraud was successful, she agreed to lie to the IRS cover it up.

The same considerations that supported sentences of incarceration for Klapper's co-defendants, including the need for general deterrence, warrant a meaningful jail sentence here.

**Conclusion**

Klapper should be sentenced to four months of incarceration, 12 months of supervised release, and a fine of $20,000.

Date: October 9, 2019

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:   */s/ Justin D. O'Connell*
ERIC S. ROSEN
JUSTIN D. O'CONNELL
LESLIE A. WRIGHT
KRISTEN A. KEARNEY
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorneys of record for each other party by CM/ECF on October 9, 2019.

By: */s/ Justin D. O'Connell*
JUSTIN D. O'CONNELL